ORIGINAL

FILED
DEC 26 2007
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT of FEDERAL CLAIMS

| | | |
|---|---|---|
| BETTY J. CROUSE | § | |
| | § | |
| | § | CIVIL NO. 07-894 T |
| Plaintiffs, | § | JUDGE |
| | § | |
| v. | § | |
| | § | |
| | § | |
| UNITED STATES OF AMERICA | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

1. Plaintiff, Betty J. Crouse, is a citizen of the United States of America who resides at XXXX Fife and Drum Rd., Action, MA, 01720.

2. The Defendant is the United States of America.

3. This is a suit arising under Sections 7422, 6401, 6402, 6230, 6404(e)(1), and 6621(c) of the Internal Revenue Code[1] and the laws of the United States for the refund of income taxes collected from Plaintiff.

4. Jurisdiction is conferred upon the Court by Title 28, Sections 1346(a)(1) and 1491(a)(1) of the United States Code.

---

[1]References to Section, §, and the Internal Revenue Code are to Title 26 of the United States Code.

**COUNT ONE**
**(Calendar Year 1984)**

5. Crouse filed a timely federal income tax return for calendar year 1984 and paid the taxes reported due on that return. Her taxpayer identification number, as reflected on that tax return, is XXX-XX-1880.

6. Crouse was a limited partner in USB Flame Growers ("USBFG"), a California limited partnership.

7. A dispute arose between the IRS and USBFG as to certain partnership items reported on the partnership's tax return and suit was filed in the Tax Court contesting the IRS's proposed adjustments to the partnership's return.

8. The Tax Matters Partner ("TMP") for USBFG and the IRS filed an agreed decision with respect to those partnership items in that Tax Court action.

9. Following that agreement, on September 23, 2002, the IRS assessed tax liability of $6,747.00 and interest and §6621(c) penalty interest of $37,299.75 against the Crouse for 1984.

10. On November 25, 2002, Crouse paid the assessments in full.

11. On November 8, 2004, Crouse filed with the IRS a claim for refund of tax of $6,747.00 and interest and §6621(c) penalty interest of $ 37,856.44 for 1984.

12. As grounds for recovery, Crouse restates and incorporates by reference the averments set forth in the Explanation to her refund claim for 1984:

A. The assessment of tax and interest was made after the statute of limitations had already expired. It was made after November 11, 2002 and backdated to October 14, 2002. See Exhibit "A" to the Refund claim attached at page 4 and notations. Any amount assessed and collected after the statute of limitations has expired constitutes an overpayment pursuant to Internal Revenue

Code §6401. The assessment related to the Partnership was made more than one year after the Tax Court decision became final on October 18, 2001. This claim concedes that the partnership items should, in fact, be adjusted as agreed by the TMP and it is, therefore, not necessary to show fraud, malfeasance or misrepresentation. The claim is not barred because the claim does not seek a change in the "treatment of partnership items."

B. Any amount assessed and collected after the statute of limitations had expired constitutes a refundable overpayment pursuant to §6401. *Alexander, supra; Cohen v. Commissioner*, 91-2 U.S.T.C. ¶50,384 (1991) *aff'd.* 995 F.2d 205 (Fed. Cir. 1993).

C. The claim is timely. It is being filed within two years from the date of payment. Additionally, even if any of the periods under §6230 apply to any portion of this claim, it is timely under those provisions as well.

D. Additionally and in the alternative, even if the statute of limitations does not bar the assessment and collection of tax, Plaintiffs are not liable for the penalty portion of the interest paid under §6621(c). It is clear that several of the initial proposed bases for the adjustments set forth in the original FPAA were independent of any basis that would have constituted a "tax motivated transaction." The controlling case is *Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004), copy attached as Exhibit "B" to the refund claim, in which the Fifth Circuit clearly held that where the tax liability resulted from a settlement in a TEFRA partnership proceeding where the original FPAA asserted both "tax motivated" grounds for the adjustments and non-tax motivated grounds, §6621(c) penalty interest cannot be imposed! The FPAA clearly contained numerous grounds for adjustment, most of which are not "tax motivated transaction" grounds. This case followed the Tax Court case, *McCrary v. Commissioner*, 92 T.C. 827 (1989), and its progeny. This case clearly established that

to the extent the taxpayers made concessions to avoid the necessity for litigation and did not require the Court to determine if the adjustments were specifically "attributable to" a tax-motivated transaction, the §6621(c) penalty was inapplicable, even though some of the IRS's alternative grounds in the original FPAA for disallowance would support it! *See also Todd* v. *Commissioner*, 862 F.2d 540 (5th Cir. 1988). Treasury Regulation §301.6621-2T, A-5, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 59394 (Dec. 28, 1984) also supports this position.

E. In addition and in the alternative, the taxpayer(s) are not liable for the penalty portion of the interest paid under §6621(c). To the extent the tax deficiencies upon which the §6621(c) interest was assessed arose from agreed adjustments to partnership items, based upon an agreement under §6224(c), the partnership item adjustments were based solely on amounts offered as adjustments by the TMP and accepted by the IRS. No trial was conducted. To the extent the deficiency is based on an §6224(c) agreed settlement that was entered into by the TMP, such an agreement can only relate to specific adjustments to partnership items. The assessment that resulted from the Tax Court decision reflected only a concession to the partnership item adjustments, which avoided the requirement of a trial on each of the elements set out in the relevant original FPAA. There was no agreement by the taxpayers that the tax deficiency was subject to §6621(c) or that the adjustments resulted from tax motivated transactions as defined in §6621(c) or the relevant regulations.

F. Alternatively, even if the doctrine under *Todd, McCrary*, and Treas. Reg. §301.6621-2T, A-5 does not preclude the application of §6621(c), no portion of the underlying tax liability was attributable to any event defined in §6621(c) or the regulations thereunder as a tax motivated transaction.

G. As an alternative, and in addition to the grounds set forth above, interest should be abated pursuant to §6404(e)(1) for the period beginning with the commencement of the IRS' wrongful seizure of the partnership's books and records during the criminal investigation of Mr. Behrens, Mr. Schreiber, and Mr. Wright individually, and ending with the termination of the criminal investigation and return of the records to the partnership. The resulting delay of the civil proceedings during that time period constituted an unreasonable delay in the proceedings due to a managerial or ministerial act. The refund claim computations have used a suspension period from December 31, 1988 to April 1, 1993, based on the dates of the IRS misconduct culminating when the IRS invaded the general partner's office, served criminal subpoenas on the general partners individually and seized the partnership's records to the date the general partners were notified of the abandonment of the criminal investigation and the records were returned. The period of suspension should actually be longer based on when the referral to the criminal investigation division was first made to the date when all partnership records were returned to the general partners, and the IRS should recompute and pay the greater amount under this claim based on those dates. The interest accrued on the tax deficiencies during the erroneous and unreasonable conduct of a criminal investigation of the general partners, seizure, disorganization and loss of partnership records in the course of that investigation, delay or suspension of the civil examination and adjustment process, resulted in impairment of the ability to defend against adjustments to partnership items the IRS eventually asserted, all of which constituted managerial or ministerial acts which were unreasonable errors and delays by officers or employees of the IRS acting in their official capacities. All such acts occurred after the IRS first contacted the tax matters partners in writing with regard to the civil partnership level return examination.

H. Interest should also be abated for the period beginning with a date 45 days after the finality of the Tax Court decision reflecting the partnership item settlement and ending on the date of assessment of the income tax liability. The failure to promptly assess the tax deficiency was clearly a managerial or ministerial act resulting in an unreasonable delay of the tax assessment.

I. Additionally and in the alternative a refund should be granted in an amount equal to the relief requested by the taxpayers in Paragraphs 4 through 7 which the taxpayers should have been able to seek in an offer in compromise, but which the IRS notified taxpayers' counsel would be denied by the IRS based on its improperly restrictive regulations under §7122 regarding effective tax administration offers in compromise and their refusal to consider offers in compromise after the taxpayers fully paid the liability.

J. The portion of the interest refund sought that is attributable solely to the reversal of the §6621(c) penalty interest, taking into account *Avon Products* and §6402 is $17,482.15. See Exhibit "C" to the refund claim attached

K. The portion of the interest refund sought that is attributable solely to the reversal of the §6621(c) penalty interest, taking into account *Avon Products* and §6402 and applying §6404(e) is $26,081.62. See Exhibit "D" tot he refund claim attached.

13. Over six (6) months have elapsed since Crouse filed her original claim for refund. No action on the claim for refund has been taken by Congress or any agency of the United States or in any judicial proceeding, including any in the Tax Court of the United States.

14. Crouse is the sole owner of the claim asserted herein against the Defendant and has made no assignment of said claim.

WHEREFORE, Plaintiff Betty J. Crouse prays for judgment against Defendant, the United States of America, in the amount of $44,603.44, plus interest, attorneys' fees, and costs allowed by law, and for such other and further relief as the Court may deem appropriate.

Respectfully,

Thomas E. Redding
Texas State Bar No. 16661300
Redding & Associates, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
(713) 965-9244
(713) 621-5227 (Fax)
ATTORNEY FOR PLAINTIFFS

Of Counsel for Plaintiffs:
Teresa J. Womack
Texas State Bar No. 00788707
Sallie W. Gladney
Texas State Bar No. 00787546
Redding & Associates, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
(713) 965-9244
(713) 621-5227 (Fax)

**REDDING & ASSOCIATES, P.C.**
ATTORNEYS AT LAW
2914 West T.C. Jester
Houston, Texas 77018-7010
Telephone: (713) 965-9244 Telecopier: (713) 621-6227

Thomas E. Redding, J.D.
Sallie W. Gladney, J.D.

Teresa J. Womack, J.D.
Brett A. Thompson, J.D., C.P.A.

November 8, 2005

**PRIORITY CERTIFIED MAIL**
**# 7004 1160 0007 3083 1588**
**RETURN RECEIPT REQUESTED**

Internal Revenue Service Center
Andover, Massachusetts 05501

Re: Betty Jane Crouse (SSN [redacted]-1880)
Form 1040X, Amended U.S. Individual Income Tax Return, for 1984
Form 843, Claim for Refund and Request for Abatement, for 1984
Form 8822, Change of Address, for tax year 1984 only

Dear Sirs:

Enclosed are the above refund claims to be filed for the above clients. Please mail the refunds in my care accordance with the instructions on Part 6 of the attached power of attorney.

Very truly yours,

REDDING & ASSOCIATES, P.C.

Thomas E. Redding

TER:js
Enclosures - Form 1040X (1)
Form 843 (1)
Form 8822
Power of Attorney

FILE

R:\DOCS\CORRESP.Q\QSBAN025.CR2

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

7004 1160 0007 3083 1588

| | |
|---|---|
| Postage | $ 3.85 |
| Certified Fee | 2.30 |
| Return Reciept Fee (Endorsement Required) | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 11.90 |

Postmark Here: HOUSTON TX OAK FOREST STA USPS 77018 NOV 8 2005

Sent To: IRS

Street, Apt. No.; or PO Box No.

City, State, ZIP+4: Andover, MA 05501

PS Form 3800, June 2002 See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Internal Revenue Service
Andover, MA 05501

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature X NOV 10 2005 ☐ Agent ☐ Addressee

B. Received by (Printed Name) C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

RECEIVED IRS ANDOVER / NORTH READING, MA 01889

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7004 1160 0007 3083 1588

PS Form 3811, February 2004 Domestic Return Receipt 102595-02-M-1540

Form **2848**
(Rev. January 2002)
Department of the Treasury
Internal Revenue Service

# Power of Attorney and Declaration of Representative

▶ See the separate instructions.

| OMB No. 1545-0150 |
|---|
| For IRS Use Only |
| Received by: |
| Name ______ |
| Telephone ______ |
| Function ______ |
| Date / / |

**Part I** **Power of Attorney** (Type or print.)

**1 Taxpayer information.** Taxpayer(s) must sign and date this form on page 2, line 9.

| Taxpayer name(s) and address | Social security number(s) | Employer identification number |
|---|---|---|
| Betty Jane Crouse<br>[redacted] | [redacted]/1880 | |
| | Daytime telephone number | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2 Representative(s)** must sign and date this form on page 2, Part II.

| Name and address | |
|---|---|
| Thomas E. Redding<br>2914 West T.C. Jester<br>Houston, Texas 77018 | CAF No. 7800-63703R<br>Telephone No. (713) 965-9244<br>Fax No. (713) 621-5227<br>Check if new: Address ☐ Telephone No. ☐ |
| Sallie W. Gladney<br>2914 West T.C. Jester<br>Houston, Texas 77018 | CAF No. 7805-78887R<br>Telephone No. (713) 965-9244<br>Fax No. (713) 621-5227<br>Check if new: Address ☐ Telephone No. ☐ |
| Teresa J. Womack<br>2914 West T.C. Jester<br>Houston, Texas 77018 | CAF No. 7805-87212R<br>Telephone No. (713) 965-9244<br>Fax No. (713) 621-5227<br>Check if new: Address ☐ Telephone No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3 Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) or Civil Penalty (See the instructions for line 3.) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) |
|---|---|---|
| Income | 1040 | ending: December 31, 1980, 1981, 1982, 1983, 1984, 1985, |
| | | 1986, 1987, 1988, 1989, 1990, 1991, 1992, 1993, 1994, 1995, |
| | for CAF purposes enter 1040 information only. | 1996, 1997, 1998, 1999, 2000, 2001, 2002 and 2003. |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for **Line 4. Specific uses not recorded on CAF.** ▶ ☐

**5 Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative, the authority to execute a request for a tax return, or a consent to disclose tax information unless specifically added below, or the power to sign certain returns. See the instructions for **Line 5. Acts authorized.**

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: This power includes, but is not limited to, authorization to exercise the taxpayer's rights regarding partnership items and affected items and under I.R.C. section 6103(e)(1)(C) relative to Forms 1065 for partnerships in which the taxpayer(s) was a partner.

**Note:** *In general, an unenrolled preparer of tax returns cannot sign any document for a taxpayer. See Revenue Procedure 81-38, printed as Pub. 470, for more information.*

**Note:** *The tax matters partner of a partnership is not permitted to authorize representatives to perform certain acts. See the separate instructions for more information.*

**6 Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH,** refund checks, initial here bjc and list the name of that representative below.

Name of representative to receive refund check(s) ▶ Thomas E. Redding

**For Paperwork Reduction and Privacy Act Notice, see the separate instructions.**
ISA
STF FED4675F.1

7 **Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2 unless you check one or more of the boxes below.

a If you want the first representative listed on line 2 to receive the original, and yourself a copy, of such notices or communications, check this box . . . . . . ▶ [ ]

b If you also want the second representative listed to receive a copy of such notices and communications, check this box . . . ▶ [ ]

c If you do not want any notices or communications sent to your representative(s), check this box . . . . . . ▶ [ ]

8 **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you **do not** want to revoke a prior power of attorney, check here . . . . . . ▶ [ ]

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

9 **Signature of taxpayer(s).** If a tax matter concerns a joint return, **both** husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

Betty-Jane Crouse (signature) 8/12/05

Signature | Date | Title (if applicable)

Betty-Jane Crouse

Print Name

Signature | Date | Title (if applicable)

Print Name

**Part II** **Declaration of Representative**

**Caution:** *Students with a special order to represent taxpayers in Qualified Low Income Taxpayer Clinics or the Student Tax Clinic Program, see the separate instructions for Part II.*

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:

a Attorney — a member in good standing of the bar of the highest court of the jurisdiction shown below.
b Certified Public Accountant — duly qualified to practice as a certified public accountant in the jurisdiction shown below.
c Enrolled Agent — enrolled as an agent under the requirements of Treasury Department Circular No. 230.
d Officer — a bona fide officer of the taxpayer's organization.
e Full-Time Employee — a full-time employee of the taxpayer.
f Family Member — a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
g Enrolled Actuary — enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d)(1) of Treasury Department Circular No. 230).
h Unenrolled Return Preparer — an unenrolled return preparer under section 10.7(c)(1)(viii) of Treasury Department Circular No. 230.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.**

| Designation — insert above letter (a–h) | Jurisdiction (state) or Enrollment Card No. | Signature | Date |
|---|---|---|---|
| A | Texas | (signature) Thomas E. Redding | 10/17/05 |
| A | Texas | (signature) Sallie W. Gladney | 10-17-05 |
| A | Texas | Teresa J. Womack | |

STF FED4675F.2

Form **1040X** (Rev. November 2004)

Department of the Treasury—Internal Revenue Service

# Amended U.S. Individual Income Tax Return

▶ See separate instructions.

OMB No. 1545-0091

**This return is for calendar year ▶** 1984 **, or fiscal year ended ▶**

Please print or type

| | | |
|---|---|---|
| Your first name and initial<br>Betty J. | Last name<br>Crouse | Your social security number<br>[redacted]1880 |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| Home address (no. and street) or P.O. box if mail is not delivered to your home<br>c/o Thomas E. Redding; 2914 West T. C. Jester ***(POA ATTACHED, FORM 2848)*** | Apt. no. | Phone number<br>713-965-9244 |
| City, town or post office, state, and ZIP code. If you have a foreign address, see page 2 of the instructions.<br>Houston, Texas 77018-7010 ******ADDRESS FOR THIS MATTER ONLY****** | | For Paperwork Reduction Act Notice, see page 6. |

**A** If the name or address shown above is different from that shown on the original return, check here ▶ ☒

**B** Has the original return been changed or audited by the IRS or have you been notified that it will be? ☒ Yes ☐ No

**C** Filing status. Be sure to complete this line. **Note.** You cannot change from joint to separate returns after the due date.

On original return ▶ ☐ Single ☐ Married filing jointly ☐ Married filing separately ☒ Head of household ☐ Qualifying widow(er)

On this return ▶ ☐ Single ☐ Married filing jointly ☐ Married filing separately ☒ Head of household* ☐ Qualifying widow(er)

* If the qualifying person is a child but not your dependent, see page 2.

| Use Part II on the back to explain any changes | | A. Original amount or as previously adjusted (see page 3) | B. Net change—amount of increase or (decrease)—explain in Part II | C. Correct amount |
|---|---|---|---|---|
| **Income and Deductions (see pages 2–6)** | | | | |
| 1 Adjusted gross income (see page 3) | 1 | | | |
| 2 Itemized deductions or standard deduction (see page 3) | 2 | | | |
| 3 Subtract line 2 from line 1 | 3 | | | |
| 4 Exemptions. If changing, fill in Parts I and II on the back | 4 | | | |
| 5 Taxable income. Subtract line 4 from line 3 | 5 | | | |
| **Tax Liability** | | | | |
| 6 Tax (see page 4). Method used in col. C | 6 | | | |
| 7 Credits (see page 4) | 7 | | | |
| 8 Subtract line 7 from line 6. Enter the result but not less than zero | 8 | | | |
| 9 Other taxes (see page 4) | 9 | | | |
| 10 Total tax. Add lines 8 and 9 | 10 | | | |
| **Payments** | | | | |
| 11 Federal income tax withheld and excess social security and tier 1 RRTAtax withheld. If changing, see page 4 | 11 | *"See Explanation -- Claim is based* | | |
| 12 Estimated tax payments, including amount applied from prior year's return | 12 | *on assessment barred by limitations,* | | |
| 13 Earned income credit (EIC) | 13 | | | |
| 14 Additional child tax credit from Form 8812 | 14 | *not canges to tax liability"* | | |
| 15 Credits from Form 2439, Form 4136, or Form 8885 | 15 | | | |
| 16 Amount paid with request for extension of time to file (see page 5) | 16 | | | |
| 17 Amount of tax paid with original return plus additional tax paid after it was filed | 17 | | | |
| 18 Total payments. Add lines 11 through 17 in column C | 18 | | | |

**Refund or Amount You Owe**

| | | |
|---|---|---|
| 19 Overpayment, if any, as shown on original return or as previously adjusted by the IRS | 19 | *Not Applicable* |
| 20 Subtract line 19 from line 18 (see page 5) | 20 | *Not Applicable* |
| 21 **Amount you owe.** If line 10, column C, is more than line 20, enter the difference and see page 5 | 21 | |
| 22 If line 10, column C, is less than line 20, enter the difference | 22 | *Not Applicable* |
| 23 Amount of line 22 you want **refunded to you** | 23 | 6,747 ** |
| 24 Amount of line 22 you want **applied to your** estimated tax \| 24 \| | | |

**Sign Here**

Joint return? See page 2. Keep a copy for your records.

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which the preparer has any knowledge.

▶ Betty Jane Crouse 11/3/05
Your signature Date

▶ Spouse's signature. If a joint return, both must sign. Date

**Paid Preparer's Use Only**

Preparer's signature ▶ [signature] CPA — Date 11/2/05 — Check if self-employed ☒ — Preparer's SSN or PTIN P00097501

Firm's name (or yours if self-employed), address, and ZIP code ▶ BRETT A. THOMPSON, CPA, 20214 KINGSLAND BLVD. KATY, TX 77450 — EIN — Phone no. 713-965-9244

Form **1040X** (Rev. 11-2004)

** *or such greater amount as is legally refundable, plus interest.*

ISA
STF FED3171F.1

Form 1040X (Rev. 11-2004) Page 2

**Part I** **Exemptions.** See Form 1040 or 1040A instructions.

If you are **not changing your exemptions,** do not complete this part.
If claiming **more exemptions,** complete lines 25–31.
If claiming **fewer exemptions,** complete lines 25–30.

| | | Line | A. Original number of exemptions reported or as previously adjusted | B. Net change | C. Correct number of exemptions |
|---|---|---|---|---|---|
| 25 | Yourself and spouse. **Caution.** If someone can claim you as a dependent, you cannot claim an exemption for yourself. | 25 | | | 0 |
| 26 | Your dependent children who lived with you | 26 | | | 0 |
| 27 | Your dependent children who did not live with you due to divorce or separation | 27 | | | 0 |
| 28 | Other dependents | 28 | | | 0 |
| 29 | Total number of exemptions. Add lines 25 through 28 | 29 | | | 0 |
| 30 | Multiply the number of exemptions claimed on line 29 by the amount listed below for the tax year you are amending. Enter the result here and on line 4. | 30 | | | 0.00 |

| Tax year | Exemption amount | But see the instructions for line 4 on page 3 if the amount on line 1 is over: |
|---|---|---|
| 2004 | $3,100 | $107,025 |
| 2003 | 3,050 | 104,625 |
| 2002 | 3,000 | 103,000 |
| 2001 | 2,900 | 99,725 |

31 Dependents (children and other) not claimed on original (or adjusted) return:

| (a) First name | Last name | (b) Dependent's social security number | (c) Dependent's relationship to you | (d) ✓ if qualifying child for child tax credit (see page 5) |
|---|---|---|---|---|
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |

No. of children on 31 who:
- lived with you ▶ ☐
- did not live with you due to divorce or separation (see page 5) ▶ ☐

Dependents on 31 not entered above ▶ ☐

**Part II** **Explanation of Changes to Income, Deductions, and Credits**

**Enter the line number from the front of the form for each item you are changing and give the reason for each change. Attach only the supporting forms and schedules for the items changed. If you do not attach the required information, your Form 1040X may be returned. Be sure to include your name and social security number on any attachments.**

If the change relates to a net operating loss carryback or a general business credit carryback, attach the schedule or form that shows the year in which the loss or credit occurred. See page 2 of the instructions. Also, check here ▶ ☐

***** *Please See Explanation Attached* *****

**Part III** **Presidential Election Campaign Fund.** Checking below will not increase your tax or reduce your refund.
If you did not previously want $3 to go to the fund but now want to, check here ▶ ☐
If a joint return and your spouse did not previously want $3 to go to the fund but now wants to, check here ▶ ☐



STF FED3171F.2

Form **2848** (Rev. January 2002) Department of the Treasury Internal Revenue Service

# Power of Attorney and Declaration of Representative

▶ See the separate instructions.

OMB No. 1545-0150

For IRS Use Only
Received by:
Name
Telephone
Function
Date / /

**Part I** Power of Attorney (Type or print.)

**1 Taxpayer information.** Taxpayer(s) must sign and date this form on page 2, line 9.

Taxpayer name(s) and address: Betty Jane Crouse [redacted]

Social security number(s): [redacted]-1880

Employer identification number

Daytime telephone number

Plan number (if applicable)

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2 Representative(s)** must sign and date this form on page 2, Part II.

Name and address
Thomas E. Redding
2914 West T.C. Jester
Houston, Texas 77018

CAF No. 7800-63703R
Telephone No. (713) 965-9244
Fax No. (713) 621-5227
Check if new: Address ☐ Telephone No. ☐

Name and address
Sallie W. Gladney
2914 West T.C. Jester
Houston, Texas 77018

CAF No. 7805-78887R
Telephone No. (713) 965-9244
Fax No. (713) 621-5227
Check if new: Address ☐ Telephone No. ☐

Name and address
Teresa J. Womack
2914 West T.C. Jester
Houston, Texas 77018

CAF No. 7805-87212R
Telephone No. (713) 965-9244
Fax No. (713) 621-5227
Check if new: Address ☐ Telephone No. ☐

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3 Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) or Civil Penalty (See the instructions for line 3.) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) |
|---|---|---|
| Income | 1040 | ending: December 31, 1980, 1981, 1982, 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, 1991, 1992, 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002 and 2003. |
| | for CAF purposes enter1040 information only. | |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for **Line 4. Specific uses not recorded on CAF.** ▶ ☐

**5 Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative, the authority to execute a request for a tax return, or a consent to disclose tax information unless specifically added below, or the power to sign certain returns. See the instructions for **Line 5. Acts authorized.**

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: This power includes, but is not limited to, authorization to exercise the taxpayer's rights regarding partnership items and affected items and under I.R.C. section 6103(e)(1)(C) relative to Forms 1065 for partnerships in which the taxpayer(s) was a partner.

**Note:** *In general, an unenrolled preparer of tax returns cannot sign any document for a taxpayer. See Revenue Procedure 81-38, printed as Pub. 470, for more information.*

**Note:** *The tax matters partner of a partnership is not permitted to authorize representatives to perform certain acts. See the separate instructions for more information.*

**6 Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH,** refund checks, initial here bjc and list the name of that representative below.

Name of representative to receive refund check(s) ▶ Thomas E. Redding

**For Paperwork Reduction and Privacy Act Notice, see the separate instructions.**
ISA
STF FED4675F.1

7 **Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2 unless you check one or more of the boxes below.

a If you want the first representative listed on line 2 to receive the original, and yourself a copy, of such notices or communications, check this box . . . ▶

b If you also want the second representative listed to receive a copy of such notices and communications, check this box . . . ▶

c If you do not want any notices or communications sent to your representative(s), check this box . . . ▶

8 **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you **do not** want to revoke a prior power of attorney, check here . . . ▶

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

9 **Signature of taxpayer(s).** If a tax matter concerns a joint return, **both** husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

Betty-Jane Crouse

Signature — Date: 8/12/05 — Title (if applicable)

Betty-Jane Crouse

Print Name

Signature — Date — Title (if applicable)

Print Name

## Part II Declaration of Representative

**Caution:** *Students with a special order to represent taxpayers in Qualified Low Income Taxpayer Clinics or the Student Tax Clinic Program, see the separate instructions for Part II.*

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:

a Attorney — a member in good standing of the bar of the highest court of the jurisdiction shown below.
b Certified Public Accountant — duly qualified to practice as a certified public accountant in the jurisdiction shown below.
c Enrolled Agent — enrolled as an agent under the requirements of Treasury Department Circular No. 230.
d Officer — a bona fide officer of the taxpayer's organization.
e Full-Time Employee — a full-time employee of the taxpayer.
f Family Member — a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
g Enrolled Actuary — enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d)(1) of Treasury Department Circular No. 230).
h Unenrolled Return Preparer — an unenrolled return preparer under section 10.7(c)(1)(viii) of Treasury Department Circular No. 230.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.**

| Designation — Insert above letter (a-h) | Jurisdiction (state) or Enrollment Card No. | Signature | Date |
|---|---|---|---|
| A | Texas | Thomas E. Redding | 10/17/05 |
| A | Texas | Sallie W. Gladney | 10-17-05 |
| A | Texas | Teresa J. Womack | |

STF FED4675F.2

**BETTY JANE CROUSE**
**(SSN[redacted]1880)**
**EXPLANATION - 1984 REFUND CLAIM**
**AND STATEMENT REQUESTING APPLICATION OF §6621(d)**

This refund claim, as it relates to tax and interest assessed relative to adjustments to partnership items and affected items related to the U.S.B. Flame Growers partnership (referred to in this explanation as "the Partnership") for 1984 (referred to in this explanation as "the settlement years"), is filed based upon the following grounds:

1. The assessment of tax and interest was made after the statute of limitations had already expired. Any amount assessed and collected after the statute of limitations has expired constitutes an overpayment pursuant to Internal Revenue Code §6401. The assessment related to the Partnership was made more than three years after the Partnership return was filed. The settlement upon which the assessment was based was solicited by the Internal Revenue Service and entered into by the Tax Matters Partner after the statute of limitations had expired. *Alexander v. United States*, 44 F.3d 328 (5th Cir. 1995), and *Ewing v. United States*, 914 F.2d 499 (4th Cir. 1990). An extension of the statute of limitations must be pursuant to a written agreement entered into "before the expiration of such period." I.R.C. §6229(b)(1). See Rev. Rul. 74-580, 1974-2 C.B. 400, *Alexander, supra; Melahn v. Commissioner*, 9 T.C. 768 (1947). (Neither an invalid Notice of Final Partnership Administrative Adjustment ("FPAA") nor an invalid petition filed with the Tax Court suspends the limitations period, nor does a settlement agreement entered into after the statute of limitations has expired reopen the period for assessment.) This claim does not seek a change in the treatment of the partnership items. This claim concedes that the partnership items should, in fact, be adjusted as agreed by the TMP and it is, therefore, not necessary to show fraud, malfeasance or misrepresentation. The claim is not barred because the claim does not seek a change in the "treatment of partnership items."

2. Any amount assessed and collected after the statute of limitations had expired constitutes a refundable overpayment pursuant to I.R.C. §6401. *Alexander, supra; Cohen v. Commissioner*, 91-2 U.S.T.C. ¶50,384 (1991) *aff'd.* 995 F.2d 205 (Fed. Cir. 1993).

3. The claim is timely to the extent it is being filed within two years from the date of payment. Additionally, it is timely to the extent of all payments on or after the protective refund claim and informal claim for refund filed with the offer in compromise on March 26, 2003.

4. Additionally and in the alternative, even if the statute of limitations does not bar the assessment and collection of tax, taxpayer(s) are not liable for the penalty portion of the interest paid under I.R.C. §6621(c). It is clear that several of the initial proposed bases for the adjustments set forth in the original FPAA were independent of any basis that would have constituted a "tax motivated transaction." **The controlling case is the very recent Fifth Circuit Court of Appeals opinion in *Weiner v. United States*, 389 F3d 152, Fifth Cir., October 25, 2004, copy attached as Exhibit "B," in which the Fifth Circuit clearly held that where the tax liability resulted from a settlement in a TEFRA partnership proceeding where the original FPAA asserted both "tax motivated" grounds for the adjustments and non-tax motivated grounds, §6621(c) penalty**

**interest cannot be imposed!** The FPAA clearly contained numerous grounds for adjustment, most of which are not "tax motivated transaction" grounds. This case followed the Tax Court case, *McCrary v. Commissioner*, 92 T.C. 827 (1989), and its progeny. This case clearly established that to the extent the taxpayers made concessions to avoid the necessity for litigation and did not require the Court to determine if the adjustments were specifically "attributable to" a tax-motivated transaction, the §6621(c) penalty was inapplicable, even though some of the IRS's alternative grounds in the original FPAA for disallowance would support it! *See also Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988). Treasury Regulation §301.6621-2T, A-5, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 59394 (Dec. 28, 1984) also supports this position.

5. In addition and in the alternative, the taxpayer(s) are not liable for the penalty portion of the interest paid under I.R.C. §6621(c). To the extent the tax deficiencies upon which the I.R.C. §6621(c) interest was assessed arose from agreed adjustments to partnership items, based upon an agreement under I.R.C. §6224(c), the partnership item adjustments were based solely on amounts offered as adjustments by the TMP and accepted by the IRS. No trial was conducted. To the extent the deficiency is based on an I.R.C. §6224(c) agreed settlement that was entered into by the TMP, such an agreement can only relate to specific adjustments to partnership items. The assessment that resulted from the Tax Court decision reflected only a concession to the partnership item adjustments, which avoided the requirement of a trial on each of the elements set out in the relevant original FPAA. There was no agreement by the taxpayers that the tax deficiency was subject to §6621(c) or that the adjustments resulted from tax motivated transactions as defined in I.R.C. §6621(c) or the relevant regulations.

6. Alternatively, even if the doctrine under *Todd*, *McCrary*, and Treas. Reg. §301.6621-2T, A-5 does not preclude the application of I.R.C. §6621(c), no portion of the underlying tax liability was attributable to any event defined in I.R.C. §6621(c) or the regulations thereunder as a tax motivated transaction. Additionally, the IRS failed to make any determination or conduct any examination regarding the individual taxpayer before assessing the §6621(c) penalty interest and that portion of the assessment is simply a naked and invalid assessment.

7. As an alternative, and in addition to the grounds set forth above, interest should be abated pursuant to I.R.C. §6404 as follows:

(a) First, interest should be abated for the period beginning with the commencement of the IRS' wrongful seizure of the partnership's books and records during the criminal investigation of Mr. Behrens and Mr. Wright individually, and ending with the termination of the criminal investigation and return of the records to the partnership. The resulting delay of the civil proceedings during that time period constituted an unreasonable delay in the proceedings due to a managerial or ministerial act. The refund claim computations have used a suspension period from December 31, 1988 to April 1, 1993, based on the dates of the IRS misconduct culminating when the IRS invaded the general partner's office, served criminal subpoenas on the general partners individually and seized the partnership's records to the date the general partners were notified of the abandonment of the criminal investigation and the records were returned. The period of suspension should actually be longer based on when the referral to the criminal investigation division was first made to the date when all

partnership records were returned to the general partners, and the IRS should recompute and pay the greater amount under this claim based on those dates. The interest accrued on the tax deficiencies during the erroneous and unreasonable conduct of a criminal investigation of the general partners, seizure, disorganization and loss of partnership records in the course of that investigation, delay or suspension of the civil examination and adjustment process, resulted in impairment of the ability to defend against adjustments to partnership items the IRS eventually asserted, all of which constituted managerial or ministerial acts which were unreasonable errors and delays by officers or employees of the IRS acting in their official capacities. All such acts occurred after the IRS first contacted the tax matters partners in writing with regard to the civil partnership level return examination.

(b) Second, interest should be abated for the period beginning with a date 45 days after the finality of the Tax Court decision reflecting the partnership item settlement and ending on the date of assessment of the income tax liability. The failure to promptly assess the tax deficiency was clearly a managerial or ministerial act resulting in an unreasonable delay of the tax assessment.

8. Additionally and in the alternative a refund should be granted in an amount equal to the relief requested by the taxpayers in Paragraphs 4 through 8 which the taxpayers should have been able to seek in an offer in compromise, but which the IRS notified taxpayers' counsel would be denied by the IRS based on its improperly restrictive regulations under §7122 regarding effective tax administration offers in compromise and their refusal to consider offers in compromise after the taxpayers fully paid the liability!

9. The portion of the interest refund sought that is attributable solely to the reversal of the §6621(c) penalty interest, taking into account *Avon Products* and §6402 is $17,482.15. See Exhibit "C."

10. The portion of the interest refund sought that is attributable solely to the reversal of the §6621(c) penalty interest, taking into account *Avon Products* and §6402 and applying §6404(e) is $26,081.62. See Exhibit "D."

Exhibits:
- A - Evidence of tax assessment and payment
- B - Copy of *Weiner v. Commissioner*
- C - Recomputation of interest removing only §6621(c)
- D - Recomputation of interest removing only §6621(c) and applying §6404

Disclosure Copy

Form 4549A | Department of the Treasury - Internal Revenue Service | Page 1 of 2

# Income Tax Examination Changes

| Name and Address of Taxpayer | SS or EI Number | Return Form No: |
|---|---|---|
| BETTY J CROUSE<br>[redacted] [redacted] | [redacted]1880 | 1040 |
| | Person with whom examination changes were discussed. | Name and Title: |

| 1. Adjustments to Income | Period End 12/31/1984 | Period End | Period End |
|---|---|---|---|
| a. ORDINARY INCOME | 20,489.00 | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| 2. **Total Adjustments** | 20,489.00 | | |
| 3. Taxable Income Per Return or as Previously Adjusted | 24,581.00 | | |
| 4. **Corrected Taxable Income** | 45,070.00 | | |
| Tax Method | TAX TABLE | | |
| Filing Status | Head of Household | | |
| 5. **Tax** | 10,854.00 | | |
| 6. Additional Taxes / Alternative Minimum Tax | | | |
| 7. Corrected Tax Liability | 10,854.00 | | |
| 8. **Less Credits** a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| 9. **Balance** (Line 7 less total of lines 8a through 8d) | 10,854.00 | | |
| 10. Plus Other Taxes a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| 11. **Total Corrected Tax Liability** (line 9 plus line 10a - 10d) | 10,854.00 | | |
| 12. Total Tax Shown on Return or as Previously Adjusted | 4,107.00 | | |
| 13. Adjustments to: a. Special Fuels Credit | | | |
| b. | | | |
| c. | | | |
| 14. **Deficiency-Increase in Tax** or (Overassessment Decrease in Tax) (Line 11 less 12 adjusted by 13) | 6,747.00 | | |
| 15. Adjustments to Prepayment Credits | | | |
| 16. **Balance Due or (Overpayment)** (Line 14 adjusted by Line 15) ( Excluding Interest and penalties) | 6,747.00 | | |

The Internal Revenue Service has agreements with State tax agencies under which information about Federal tax, including increases or decreases, is exchanged with the States. If this change affects the amount of your State income tax, you should file the State form.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income and do not pay the required tax. The IRS may order backup withholding at 31 percent after four notices have been issued to you over a 120-day period and the tax has been assessed and remains unpaid.

RGS Version 3.00.00 Form CG-4549A

Exhibit A, P. 1

Form **4549A**

Department of the Treasury - Internal Revenue Service

## Income Tax Examination Changes

Page 2 of 2

| Name and Address of Taxpayer | SS or EI Number | Return Form No: |
|---|---|---|
| BETTY J CROUSE | [redacted]-1880 | 1040 |

| 17. Penalties | Period End 12/31/1984 | Period End | Period End |
|---|---|---|---|
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| **18. Total Penalties** | | | |
| Underpayment attributable to negligence: (1981-1987) A tax addition of 50 percent of the interest due on underpayment will accrue until paid or assessed | 0.00 | | |
| Underpayment attributable to fraud: (1981-1987) A tax addition of 50 percent of the interest due on underpayment will accrue until paid or assessed | 0.00 | | |
| Underpayment attributable Tax Motivated Transactions TMT interest will accrue and be assessed at 120% of underpayment rate in accordance with IRC 6621(c) | 6,747.00 | | |
| **19. Summary of Taxes, Penalties and Interest:** | | | |
| a. Balance due or Overpayment Taxes – Line 16, Page 1 | 6,747.00 | | |
| b. Penalties (Line 18, Page2)-computed to 05/10/2002 | | | |
| c. Interest (IRC§ 6601)-computed to 06/09/2002 | 0.00 | | |
| d. TMT Interest – computed 6/09/200 on TMT underpayment | 0.00 | | |
| e. Amount due or refund (sum of lines a, b, c and d) | 6,747.00 | | |

**Other Information:**

The adjustment is from the Tax Court Decision for U.S.B. Flame Growers, #33-0068994. We adjusted your ordinary income from a loss of $51,800.00 to a loss of $31,311.00.

All or part of the underpayment of tax you were required to show on your return is a substantial understatement attributable to tax motivated transactions, as defined by section 6621(c)(3). of the Internal Revenue Code. Accordingly, the annual interest rate payable on your income taxes on this understatement is 120 percent of the adjusted rate established under Code section 6621(b).

If you require any additional information, please contact yout tax matters partner.

| Examiner's Signature: | Employee ID: | Office: | Date: |
|---|---|---|---|
| ARTHUR RUPP | E0923 | brookhaven | 05/10/2002 |

RGS Version 3.00.00

Form CG-4549A

Exhibit A, P. 2

# Internal Revenue Service

DEPARTMENT OF THE TREASURY

e-services

This Product Contains Sensitive Taxpayer Data

Request Date: 10-20-2005
Response Date: 10-20-2005
IRS Employee Number: 520FB
Tracking Number: 100002999120

## Account Transcript

FORM NUMBER: 1040 TAX PERIOD: Dec. 31, 1984

TAXPAYER IDENTIFICATION NUMBER: [redacted]-1880

BETTY J CROUSE

Any minus sign shown below signifies a credit amount.

| | | |
|---|---|---|
| ACCOUNT BALANCE: | 0.00 | |
| ACCRUED INTEREST: | 0.00 | AS OF: May 16, 2005 |
| ACCRUED PENALTY: | 0.00 | AS OF: May 16, 2005 |
| ACCOUNT BALANCE PLUS ACCRUALS: | 0.00 | |

| | | |
|---|---|---|
| ** EXEMPTIONS: | 02 | ** FILING STATUS: Head of Household |
| ** ADJUSTED GROSS INCOME: | 61,571.00 | |
| ** TAXABLE INCOME: | 45,070.00 | |
| TAX PER RETURN: | 4,107.00 | |
| ** SE TAXABLE INCOME TAXPAYER: | 0.00 | |
| ** SE TAXABLE INCOME SPOUSE: | 0.00 | |
| ** TOTAL SELF EMPLOYMENT TAX: | 0.00 | |

** PER RETURN OR AS ADJUSTED

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER): Apr. 15, 1985
PROCESSING DATE: Apr. 29, 1985

TRANSACTIONS

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|---|---|---|---|---|
| 150 | RETURN FILED AND TAX ASSESSED<br>08211-077-68654-5 | 198516 | 04-29-1985 | $4,107.00 |

Exhibit A, P. 3

| | | | | |
|---|---|---|---|---|
| 806 | WITHHOLDING CREDIT | | 04-15-1985 | -$476.00 |
| 430 | ESTIMATED TAX DECLARATION | | 04-17-1984 | -$5,750.00 |
| 430 | ESTIMATED TAX DECLARATION | | 06-15-1984 | -$5,750.00 |
| 430 | ESTIMATED TAX DECLARATION | | 09-17-1984 | -$5,750.00 |
| 430 | ESTIMATED TAX DECLARATION | | 01-15-1985 | -$5,750.00 |
| 836 | OVERPAYMENT CREDIT ELECT TRANSFERRED TO NEXT TAX PERIOD | | 04-15-1985 | $1,000.00 |
| 846 | REFUND | | 04-29-1985 | $18,369.00 |
| 960 | RECEIVED POA/TIA | | 07-28-1990 | $0.00 |
| 961 | REMOVED POA/TIA | | 05-03-1997 | $0.00 |
| 977 | AMENDED RETURN FILED<br>29277-434-02511-0 | | 12-31-1999 | $0.00 |
| 300 | QUICK ASSESSMENT<br>22251-266-12403-2 | 200240 | 09-23-2002 | $6,747.00 |
| 290 | QUICK ASSESSMENT<br>22251-266-12403-2 | 200240 | 09-23-2002 | $0.00 |
| 340 | RESTRICTED INTEREST ASSESSED | 200240 | 09-23-2002 | $37,299.75 |
| 300 | ADDITIONAL TAX ASSESSED BY EXAMINATION<br>19247-694-98020-2 | 200244 | 11-11-2002 | $0.00 |
| 340 | RESTRICTED INTEREST ASSESSED | 200248 | 12-09-2002 | $489.22 |
| 290 | ADDITIONAL TAX ASSESSED<br>08254-722-18055-2 | 200248 | 12-09-2002 | $0.00 |
| 670 | SUBSEQUENT PAYMENT | | 11-27-2002 | -$6,747.00 |
| 480 | OFFER IN COMPROMISE PENDING | | 02-11-2003 | $0.00 |
| 706 | OVERPAID CREDIT APPLIED<br>1040 200212 | | 04-07-2003 | -$1,220.00 |
| 670 | SUBSEQUENT PAYMENT<br>OFFER IN COMPROMISE | | 03-26-2003 | -$21,666.90 |
| 482 | OFFER IN COMPROMISE WITHDRAWN | | 04-09-2003 | $0.00 |
| 971 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE<br>LEVY NOTICE ISSUED | | 11-01-2003 | $0.00 |
| 290 | ADDITIONAL TAX ASSESSED<br>19254-704-00194-3 | 200346 | 11-24-2003 | $0.00 |
| 670 | SUBSEQUENT PAYMENT<br>MISCELLANEOUS PAYMENT | | 11-10-2003 | -$14,902.07 |
| 971 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE<br>RETURN RECEIPT SIGNED | | 11-18-2003 | $0.00 |
| 706 | OVERPAID CREDIT APPLIED<br>1040 200412 | | 04-15-2005 | -$67.47 |
| 276 | FAILURE TO PAY TAX PENALTY | 200516 | 05-02-2005 | $67.47 |

This Product Contains Sensitive Taxpayer Data

Total Interest Charged 37,788.97



Amounts Paid on or after 3/26/03 = $37,856.44

Exhibit A, p. 4

6621(c) in AMCOR partnership see p.6

H
Briefs and Other Related Documents

United States Court of Appeals,
Fifth Circuit.

Morris A. WEINER, Plaintiff-Appellant-Cross-Appellee,
v.
UNITED STATES of America,
Defendant-Appellee-Cross-Appellant,
Marion S. Kraemer; Joyce W. Kraemer,
Plaintiffs-Appellants,
v.
United States of America, Defendant-Appellee.

Nos. 03-20174, 03-20176.

Oct. 25, 2004.

**Background:** Taxpayers brought separate suits, seeking refunds of income tax and interest paid in connection with their investments in limited partnerships. The United States District Court for the Southern District of Texas, Nancy K. Johnson, United States Magistrate Judge, 2002 WL 575791, imposed additional interest in one case, and in the other case, the Court, Nancy F. Atlas, J., 255 F.Supp.2d 673, ruled for taxpayer. Appeals were taken.

**Holdings:** The Court of Appeals, Edith H. Jones, Circuit Judge, held that:
(1) courts lacked jurisdiction over statute of limitations issue, and
(2) interest was not properly charged.
Affirmed in part, reversed in part, and remanded.

[1] Internal Revenue 3910
220 Most Cited Cases
Federal courts lack jurisdiction to entertain taxpayers' complaints that Notices of Final Partnership Administrative Adjustments (FPAAs) were untimely filed and cannot be basis of assessments against them; FPAA statute of limitations is "partnership item" that must be litigated in partnership level proceeding. 26 U.S.C.A. §§ 6229(a), 7422(h); 26 C.F.R. § 301.6231(a)(3)-1(b).

[2] Internal Revenue 4831
220k4831 Most Cited Cases
Interest could not be imposed at rate of 120% of statutory rate on ground of substantial underpayment attributable to "tax motivated transactions," where taxpayers settled the disallowances and paid the delinquent taxes; given multiple reasons provided for the disallowances, it could not be determined whether underpayments were "attributable to" tax motivated transaction. 26 U.S.C.(1988 Ed.) § 6621(c)(1).

Thomas E. Redding (argued), Sallie W. Gladney, Teresa Jean Womack, Redding & Associates, Houston, TX, for all Plaintiffs.

Joan I. Oppenheimer (argued), Richard Bradshaw Farber, U.S. Dept. of Justice, Tax Div. App. Section, Washington, DC, for U.S.

Appeals from the United States District Court for the Southern District of Texas.

Before JOLLY, DAVIS and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

*1 Appealing in two related cases from separate courts, Morris Weiner, Marion Kraemer, and Joyce Kraemer seek refunds of federal income taxes and interest paid in connection with their investments in various partnerships. Three issues are raised. First is the question whether federal courts have jurisdiction, notwithstanding 26 U.S.C. § 7422(h), to entertain the taxpayers' complaints that Notices of Final Partnership Administrative Adjustments (FPAAs) were untimely filed and cannot be the basis of assessments against them. Second, the taxpayers challenge substantial interest charged against them for "tax-motivated transactions" pursuant to now-repealed § 6621(c). We hold that the courts lacked jurisdiction over the statute of limitations issue and that § 6621(c) interest was improperly charged. The third issue was resolved by a recent decision of this court at odds with the trial courts' decisions. See Beall v. United States, 336 F.3d 419 (5th Cir.2003) (district courts have jurisdiction to resolve taxpayers' deficiency interest abatement requests under § 6404(e)).

*I. The Factual Background*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.





In the early 1980s, the taxpayers, all high-income professionals, invested in limited partnerships organized by American Agri-Corp ("AMCOR"). Weiner was a limited partner in Travertine Flame Associates ("TFA"). Joyce Kraemer was a limited partner in Oasis Date Associates ("ODA"); and Marion Kraemer was a limited partner in Coachella Fruit Growers ("Coachella"). The partnerships were farming entities that projected tax write-offs of approximately two hundred percent of the amount invested. The taxpayers reported their proportionate share of partnership losses on their 1984, 1985, and 1986 income tax returns.

In 1990 and 1991, the Internal Revenue Service ("IRS") sent each of the partnerships a Notice of FPAA that disallowed farming expenses and other deductions for a number of reasons, including that the partnerships' transactions were "shams" and lacked economic substance. Also in 1991, partners in TFA and ODA commenced a Tax Court action challenging the adjustments as time-barred. Because Weiner and Joyce Kraemer were partners in TFA and ODA, they automatically became parties to the suit. See 26 U.S.C. § 6226(c).

In early 1997, while the Tax Court cases were still pending, the taxpayers offered to settle their disputed partnership item deductions with the IRS through executions of Forms 870-P(AD). These settlement forms were initially sent to them by the IRS. The settlement agreement purported to disallow sixty-three percent of the deductions, as opposed to a total disallowance. The settlement documents made it clear that the IRS would assess additional tax liability and interest "as provided by law."

After accepting the taxpayers' settlements, the IRS assessed additional tax liability and interest pursuant to § 6621(c) in the following manner: for Weiner in 1984--$15,851 in additional tax and $16,663.22 in interest; for the Kraemers in 1984--$13,159 in additional tax and $16,599 in interest; for the Kraemers in 1986--no additional tax (because they had overpaid) but $4,088 in interest. The taxpayers commenced their separate refund suits in 2000. They argued in motions for summary judgment: (1) that the statute of limitations prevented the 1984 assessments; (2) that additional interest under § 6621(c) was improper as a matter of law; and (3) that the Commissioner had abused his discretion in denying their § 6404(e) abatement of interest claim. The *Kraemer* court did not consider the limitations defense because it concluded it lacked subject matter jurisdiction over the issue. The *Weiner* court, however, concluded that it did have jurisdiction, and ultimately decided that the statute of limitations had not run. Both courts also determined that they lacked jurisdiction over the interest abatement claims. Both courts denied the taxpayers' summary judgment motions on the § 6621(c) argument and set the issue for bench trials. The Kraemers conceded the issue before trial, but Weiner presented evidence on the merits and the court ultimately concluded that the interest was improper and ruled in Weiner's favor. The instant appeals followed.

*II. The Statutory Background*

*2 This case is governed by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), 26 U.S.C. §§ 6221-6233, which was enacted to "improve the auditing and adjustments of income tax items attributable to partnerships." Alexander v. United States, 44 F.3d 328, 330 (5th Cir.1995). TEFRA requires partnerships to file informational returns reflecting the distributive shares of income, gains, deductions, and credits attributable to its partners. Kaplan v. United States, 133 F.3d 469, 471 (7th Cir.1998). Accordingly, the individual partners are responsible for reporting their pro rata share of tax on their income tax returns. Id.; see also 26 U.S.C. § 701.

TEFRA requires the treatment of all partnership items to be determined at the partnership level. 26 U.S.C. § 6221. While TEFRA defines a "partnership item" in technical terms, the provision generally encompasses items "more appropriately determined at the partnership level than at the partner level." Id. § 6231(a)(3). All other items are defined as nonpartnership items. Id. § 6231(a)(4).

If the IRS decides to adjust any "partnership items" reflected on the partnership's return, it must notify the individual partners of the adjustment through a Notice of FPAA. Kaplan, 133 F.3d at 471. The IRS is given three years from the later of (1) the date a partnership return is due, or (2) the date the partnership return is filed, to issue an FPAA. 26

Note - all were AMCOR Partnerships

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Exhibit B, P.1

Case 1:07-cv-00894-LB Document 1 Filed 12/26/2007 Page 24 of 32



U.S.C. § 6229(a). The three-year period may be extended by agreement (1) between the Secretary and the partnership's tax matters partner ("TMP") (which binds all partners), or (2) between the Secretary and an individual partner (which binds only that partner). Id. § 6229(b)(1). In addition, if the IRS mails an FPAA to the TMP, the three-year period is tolled. Id. § 6229(d). This three-year limitations period is at issue in this case.

[...]r ninety days following issuance of an FPAA, the TMP [...] exclusive right to file a petition for readjustment of [...]nership items in Tax Court, the Court of Federal Claims, or a United States District Court. Id. § 6226(a). After expiration of the ninety-day period, other partners are given sixty days to file a petition for readjustment. Id. § 6226(b)(1). If a partner's tax liability might be affected by the outcome of the litigation of partnership items, that partner may participate in the proceeding. Id. § 6224(a), § 6224(c). The IRS may assess additional tax liability against individual partners within one year of the final conclusion of the partnership's tax determination. Id. § 6229(d). The partner may contest the tax liability by paying the assessment and filing a refund action in a United States District Court. However, "[n]o action may be brought [in district court] for a refund attributable to partnership items." Id. § 7422(h).

*3 But, if a partner settles his partnership tax liability with the IRS, the partner will no longer be able to participate in the partnership level litigation, and will be bound instead by the terms of the settlement agreement. Id. § 6228(a)(4), § 6224(c)(1). In addition, partnership items convert to nonpartnership items when the IRS enters into a settlement agreement with the partner with respect to such items. Id. § [62]31(b)(1)(C). Thus, if a partner files an action for a refund with [respect] to partnership items, but those items have been converted through a settlement agreement, the jurisdictional bar of § 7422(h) no longer applies. Alexander v. United States, 44 F.3d 328, 331 (5th Cir.1995).

*III. FPAA Statute of Limitations*

The *Weiner* and *Kraemer* courts reached opposing conclusions, and the parties disagree on whether district courts have jurisdiction to decide the FPAA statute of limitations question in refund actions. [FN1] Generally, district courts have jurisdiction over a taxpayer's refund action. 28 U.S.C. §§ 1340, 1346(a)(1). However, as discussed above, with limited exceptions not applicable here, "[n]o action may be brought for a refund attributable to partnership items (as defined in § 6231(a)(3))." 26 U.S.C. § 7422(h). The more precise question in this case, then, is whether the taxpayers' refund requests are attributable to any partnership item such that the district court would be deprived of jurisdiction.

This court reviews a district court's grant of summary judgment de novo and considers the same criteria that the district court relied upon when deciding the motion. *Mongrue v. Monsanto Co.*, 249 F.3d 422, 428 (5th Cir.2001). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In addition, we review a district court's determination of subject matter jurisdiction de novo. *Calhoun County, Tex. v. United States*, 132 F.3d 1100, 1103 (5th Cir.1998).

[1] The taxpayers' refund claims are based entirely on the theory that the IRS had no authority to assess tax against them in 1990 and 1991 because the FPAA statute of limitations had run for the years 1984 to 1986. Accordingly, to avoid the jurisdictional bar of § 7422(h), the taxpayers argue that the FPAA statute of limitations, found in § 6229(a), is not a "partnership item." [FN2] As noted before, TEFRA defines a "partnership item" as

> *4 any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for the purposes of [subtitle F], such item is more appropriately determined at the partnership level than at the partner level.

26 U.S.C. § 6231(a)(3). The taxpayers argue that because § 6229(a), containing the FPAA statute of limitations provision, is found in subtitle F, as opposed to subtitle A, it is not a partnership item. Furthermore, the taxpayers argue that no treasury regulation specifically refers to the





limitations issue as a partnership item. *See* 26 C.F.R. § 301.6231(a)(3)-1(a). The *Weiner* court reasoned that this omission, coupled with the fact that § 6229(a) is found only in subtitle F, prevents the FPAA statute of limitations from attaining partnership item status. We disagree with this conclusion.

First, the majority of courts to consider this issue have held that the FPAA statute of limitations issue is a partnership item that must be litigated in a partnership level proceeding. *See Chimblo v. Comm'r*, 177 F.3d 119, 125 (2d Cir.1999); *Kaplan v. United States*, 133 F.3d 469, 473 (7th Cir.1998); *Williams v. United States*, 165 F.3d 30 (6th Cir.1998) (unpublished table decision); *Barnes v. United States*, No. 95-57-Civ-ORL-22, 1997 WL 732594, * 3 (M.D.Fla. July 25, 1997), *aff'd*, 158 F.3d 587 (11th Cir.1998); *Thomas v. United States*, 967 F.Supp. 505, 506 (N.D.Ga.1997); *Slovacek v. United States*, 36 Fed. Cl. 250, 255 (1996). These courts have reasoned that because the FPAA limitations issue affects the partnership as a whole, it should not be litigated in an individual partner proceeding, as such a result would contravene the purposes of TEFRA. *See, e.g., Chimblo*, 177 F.3d at 125. We agree with this reasoning and hold that the district courts lack jurisdiction to consider the taxpayers' statute of limitations argument.

Second, responding to the taxpayers' argument directly, the treasury regulations provide that, for the purposes of subtitle F,

> [t]he term "partnership item" *includes* the accounting practices and the *legal and factual determinations* that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc.

26 C.F.R. § 301.6231(a)(3)-1(b)(emphasis added). As the court in *Slovacek* reasoned, the statute of limitations "might be said to affect the amount, timing, and characterization of income, etc., (partnership items) at the partnership level, if only in a thumbs-up or thumbs-down manner." 36 Fed.Cl. at 255. In this way, the treasury regulations have implicitly included the statute of limitations determination within the definition of "partnership item." [FN3]

*5 Third, we find distinguishable two cases the taxpayers rely on. In *Monti v. United States*, 223 F.3d 76, 82 (2d Cir.2000), the court held that a partner's right to seek consistent settlement terms from the IRS was more appropriately considered a nonpartnership item. The Second Circuit relied on several factors to justify this conclusion, among them the fact that the right to consistent settlement terms, located in § 6224(c)(2), is found in subtitle F, as opposed to subtitle A. *Id.* at 82. However, the first and arguably most important factor considered by the *Monti* court in deciding how to categorize a partner's right to consistent settlement terms dealt with the practical realities of that right. The court noted that

> [o]ne partner's right to settlement terms consistent with those granted to another partner is not a partnership item, *because* the question posed requires consideration of the relationship between one partner's situation and another's and the individual's, rather than the partnership's, communications with the IRS. The facts needed to determine whether consistent terms were offered are *facts about the partner*, not facts about the partnership.

*Id.* at 82-83 (emphasis added). Conversely, the FPAA statute of limitations determination challenged in this case deals with facts specific to the partnership. The court need not consider the relationship between one partner and another or an individual's communications with the IRS.

Likewise, the court in *Prochorenko v. United States*, 243 F.3d 1359, 1363 (Fed.Cir.2001), relying on *Monti*, concluded that a partner's right to request consistent settlement terms was not a partnership item. That court opined that

> [w]hether or not the [taxpayers] were entitled to such a reduction is an issue that is entirely dependent on their own unique factual circumstances, and has no effect on and is not affected by the tax liability of any of the other [ ] partners. Accordingly, this is not the type of issue that is "more appropriately determined at the partnership level."

*Id.* at 1363 (quoting the treasury regulations). Again, the situation in this case is quite the opposite. The timeliness of an FPAA affects the IRS's ability to make adjustments to partnership items, which in turn affects all partners alike. This determination is more appropriately made at the partnership level.

From a practical perspective, a finding of jurisdiction over



Exhibit B, P. 2

the statute of limitations issue would create an absurd result that contravenes TEFRA. As was the case here, partners could settle with the IRS and thus eliminate their ability to participate in and be bound by the result of any partnership-level proceeding. But if, as here, [FN4] the Tax Court decided the substantive statute of limitations issue against the partnership, the settling partners could simply bring individual partner-level suits in the district courts and attempt to obtain a different ruling on the statute of limitations issue. Thus, some partners would be required to [illegible] assessed deficiency, while others would not. The [illegible] advocated by the taxpayers here is at odds with TEFRA's goal of consolidating decisions that affect the partnership as a whole.

[illegible] Finally, the taxpayers contend that this court's decision in *Alexander* controls the determination whether the FPAA statute of limitations is a partnership or nonpartnership item. In *Alexander*, the taxpayer received an FPAA from the IRS notifying him of an adjustment to partnership items that would affect his tax liability. 44 F.3d at 329. The taxpayer and the IRS eventually entered into a settlement agreement binding the taxpayer to the IRS's treatment of the partnership items. *Id.* at 330. Over a year after making his deficiency payment, however, the taxpayer learned that another partner had challenged the IRS's FPAA adjustments in Tax Court on the basis of the statute of limitations. *Id.* In that proceeding, the IRS conceded that the statute of limitations had expired, and the court entered judgment for the partners. *Id.* Because Alexander had already settled with the IRS, however, the result in the Tax Court did not apply to him. *See* 26 U.S.C. § 6231(b)(1)(c). As a result, he filed his own individual refund action in the district court. The government defended the suit by arguing that the parties' [illegible] settlement agreement prevented the taxpayer from [illegible] any suit for refund. 44 F.3d at 330.

A panel of this court addressed its jurisdiction to determine if the settlement agreement barred the refund suit. This court first noted that § 7422(h) bars suits for refunds that are "attributable to partnership items." *Id.* at 331. The question then became whether the taxpayer's refund suit was in fact "attributable to" any partnership item. The court noted that while the refund was "at one time attributable to partnership items, that is, to the adjustments called for in the FPAA," the nature of those items was altered by the settlement. *Id.* Section 6231(b)(1)(C) provides that

> [f]or purposes of this subchapter, the partnership items of a partner ... shall become nonpartnership items as of the date ... the Secretary or the Attorney General (or his delegate) enters into a settlement agreement with the partner with respect to such items[.]

Therefore, the settlement agreement converted the partnership items to nonpartnership items for the purpose of the district court's jurisdiction. [FN5] The taxpayers argue here that this analysis comports with their jurisdictional argument and thus excepts their case from § 7422(h)'s bar.

*7 However, the *Alexander* court did not address the question whether the court had jurisdiction to consider the *substantive* statute of limitations issue. In *Alexander*, as opposed to this case, the Government *conceded* that the statute of limitations barred the assessments. Thus, once the *Alexander* court found that it had jurisdiction generally over the refund suit, the only substantive issue left to be decided was whether the settlement agreement contractually barred the suit. *Id.* at 331-32. The settlement agreement in *Alexander*, like the one in this case, required the taxpayers to agree that they would not bring any claim for refund based on the changed treatment of the partnership items. *Id.* at 330. The court held that the contractual provision did not bar the refund suit because the taxpayer "[did] not base his refund on the treatment of partnership items at all, but rather on the time-barred deficiency assessed as a result of such treatment." *Id.* at 332. The taxpayers here seize on this language as proof that the statute of limitations question is a nonpartnership issue. However, the *Alexander* court made this statement only in the context of analyzing the *contractual* settlement agreement. The *Alexander* court did not decide whether it had jurisdiction to reach the merits of the statute of limitations argument, because that argument had already been conceded. Thus, *Alexander* does not control the question presented in this case, and this court remains convinced that the district courts lack jurisdiction to decide the FPAA statute of limitations issue. On this issue, the decision of the district court in *Weiner* is therefore incorrect, while the *Kraemer* decision is correct.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

6621(c) Portion



IV. 6621(c) Increased Interest

[2] Despite its repeal in 1989, the draconian interest provision enacted as § 6621(c) continues to dog taxpayers for returns filed during the early 1980s. Consequently, these taxpayers contest the Government's imposition of additional interest pursuant to 26 U.S.C. § 6621(c). [FN6] The provision imposes an interest rate of 120% of the statutory rate on "any substantial underpayment attributable to tax motivated transactions." [FN7] 26 U.S.C. § 6621(c)(1) (1988). A "substantial underpayment" is any underpayment exceeding $1,000 per tax year. *Id.* § 6621(c)(2). Included in the statutory definition of "tax motivated transaction" is "any sham or fraudulent transaction." *Id.* § 6621(c)(3)(A)(v).

The taxpayers contend that the trial courts are precluded from upholding the § 6621(c) interest assessment because their underlying settlement agreements do not establish that their underpayments were attributable to "tax motivated transactions." In the FPAAs, the Government asserted *several* bases for the disallowance of certain deductions. Among them was a "sham or fraudulent transaction," which qualifies as a "tax motivated transaction" for the purposes of 6621(c). 26 U.S.C. § 6621(c)(3)(A)(v). Because the taxpayers settled with the IRS, however, there was never any need for a court to examine the IRS's claimed bases for disallowance and make a determination about their application.

*8 The taxpayers principally rely on *Todd v. Comm'r*, 862 F.2d 540 (5th Cir.1988). *Todd* dealt with the IRS's imposition of the § 6659(a) penalty. However, because both sections employ the same "attributable to" language, the analysis in *Todd* is instructive in the § 6621(c) context. In *Todd*, this court held that the taxpayers' underpayment was not "attributable to" a valuation overstatement and thus § 6659(a)'s penalty did not apply. The taxpayers in *Todd* did not settle with the IRS but instead chose to challenge the IRS's disallowances in the Tax Court. In that proceeding, the Tax Court held that the Todds were not entitled to their deductions and tax credits because the assets had not been put into service during the tax year. *Id.* at 541. On appeal, this court reasoned that because the deductions and credits were disallowed for a reason totally unrelated to any valuation overstatement, the resulting underpayment could not be "attributable to a valuation overstatement." *Id.* at 542.

The court then applied a treasury regulation formula that determines the portion of deductions to which the higher interest rate applies. [FN8] Because the court had already determined that no portion of the disallowed deductions and credits were "attributable to" the valuation overstatement, the two sides of the equation were equal. [FN9] The court noted that "where the deductions and credits ... were inappropriate altogether, the Todds' valuation of the property supposedly generating the tax benefits had no impact whatsoever on the amount of tax actually owed." *Id.* at 543. Or, stated another way, the Todds' underpayment was not "attributable to" a valuation overstatement.

In *McCrary v. Comm'r*, 92 T.C. 827, 1989 WL 35568 (1989), a case also heavily relied on by the taxpayers, the Tax Court adopted the reasoning in *Todd* and concluded that the McCrarys were not subject to § 6659(a) or § 6621(c) interest on the disallowed investment tax credit. The McCrarys conceded one of the IRS's grounds for disallowing the investment tax credit, thus eliminating the need for a trial on these issues in the Tax Court. *Id.* at 851. The ground conceded by the McCrarys (that their agreement was a license and not a lease) was neither a "valuation overstatement" nor a "tax motivated transaction." The Tax Court noted that alternative grounds could have justified the disallowance, including sham transaction, which would have qualified for the § 6621(c) addition to tax. However, the Tax Court declined to address the sham transaction issue, which was unnecessary to support the conceded disallowance, for the sole purpose of applying § 6621(c). *Id.* at 859.

The taxpayers also rely on *Heasley v. Comm'r*, 902 F.2d 380 (5th Cir.1990), in which this court relied on and extended the *Todd* rule. In *Heasley*, the IRS relied on a variety of reasons for disallowing the Heasleys' claimed tax credits. The Heasleys, like the taxpayers here, conceded the deficiency, but continued their suit in the Tax Court to challenge the § 6659(a) and § 6621(c) additions to tax. The Tax Court concluded that the Heasleys' underpayment was "attributable to" a valuation overstatement under § 6659(a). The Fifth Circuit reversed. With regard to § 6659(a), this

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Exhibit B, P. 3

court held that even though the Tax Court specifically found that the underpayment was "attributable to" a valuation overstatement, a situation that differed from that in Todd,

*9 [w]henever the IRS totally disallows a deduction or credit, the IRS may not penalize the taxpayer for a valuation overstatement included in that deduction or credit. In such a case, the underpayment is not attributable to a valuation overstatement. Instead, it is attributable to claiming an improper deduction or credit.

Gainer, 893 F.2d at 228.

These cases afford a conceptual lens through which to view the statutory phrase "attributable to" in the context of § 6621(c). In Todd, the Government argued that "attributable to" really meant "capable of being attributed," such that any time a taxpayer's underpayment was capable of being attributed to a valuation overstatement, the penalty would apply. 862 F.2d at 542. However, the Todd court reasoned that the formula indicated that Congress did not intend for the penalty to apply every time valuation overstatement was present. Likewise, the § 6621(c) formula, supra, determines the amount of tax motivated underpayment by first taking into account any other proper, but non-tax-motivated, deductions. On a theoretical level, the formula provides the same reinforcement for viewing "attributable to" narrowly in the § 6621(c) context. [FN10] When so viewed, it follows that when the FPAA lists several independent reasons for disallowing the taxpayers' deductions, there is no way to determine, without additional superfluous litigation, whether the taxpayers' underpayment is "attributable to" a reason that also qualifies as a tax-motivated transaction (such as a sham).

The Tax Court has twice embraced this narrow view of "attributable to" in § 6621(c) cases and decided that a taxpayer's blanket concession precludes a finding that any underpayment is "attributable to" a tax motivated transaction. First, in Rogers v. Comm'r, 60 T.C.M. (CCH) 1381 (1990), the taxpayers conceded the IRS's ability to disallow deductions. The Tax Court relied on McCrary, supra, and reasoned that because "the determination of whether there was a tax-motivated transaction was made only concerning the disputes over the additions to tax and increased interest, we could not conclude that the taxpayer required a trial that otherwise would have been unnecessary." Id. at 1397. The taxpayers also cite Schachter v. Comm'r, 67 T.C.M. (CCH) 3092, 1994 WL 263329, *5 (1994), in which the court noted that because the taxpayer entered into a stipulation of settled issues and conceded the disallowance of deductions, these actions "obviated the need for a trial on the numerous issues raised in the deficiency notice for the purpose of identifying which, if any of them, provided the substantive ground or grounds for disallowance...." The Schachter court was also persuaded that because of the numerous grounds alleged in the notice of deficiency, it was impossible to say that the underpayment was "attributable to" any one ground. The court noted:

Here, as in [McCrary] and [Rogers], the melange of alleged grounds, some of which were "tax motivated" grounds--but others were not--prevent us from saying, after the concession, that the underpayment was attributable to a particular ground. We are not inclined, in these circumstances, to rely on petitioners' burden of proof to show that the transaction was not tax motivated, all or in part, for the purpose of section 6621(c). The objectives of administrative efficiency and judicial economy have been well served by the closing agreement and petitioner's concession. Those objectives would not be served by requiring a trial on the substantive issues for the sole purpose of determining whether petitioner is liable for 20 percent more interest on the deficiency under section 6621(c).

*10 Id. at *6.

The same situation is present in these cases: the taxpayers settled or conceded the disallowances and paid the delinquent taxes, thus removing the need for a trial on the merits of those issues. This court can conceive of no good reason to treat the taxpayers in this case differently from the taxpayers in Todd, McCrary, Heasley, Rogers, or Schachter. There is no way, given the multiple reasons provided for the disallowance in the FPAAs, to determine whether the underpayments are "attributable to" a tax motivated transaction. Additionally, § 6621(c) was one of the provisions enacted by Congress "to deal with the Tax Court backlog." Todd, 862 F.2d at 544 n. 14. Yet, fifteen years after the statute's repeal, imposing the penalty in situations

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

6621(c) Portion



such as this does nothing to relieve the Tax Court's backlog, when the taxpayers have in fact settled with the IRS. Because, under the circumstances of these cases, the taxpayers' underpayments are not "attributable to" a tax motivated transaction as a matter of law, the IRS may not assess the additional interest against them. We thus endorse the result in Weiner, albeit on different grounds, but reverse that in Kraemer.

*Conclusion*

For the foregoing reasons, we conclude that the district courts lack jurisdiction to consider the taxpayers' FPAA statute of limitations arguments. Further, § 6621(c) interest cannot be assessed against the taxpayers as a matter of law. Finally, pursuant to Reall, the district courts have jurisdiction to consider the taxpayers' § 6404(e) interest abatement claims. Accordingly, the judgments of the trial courts are

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

FN1. The taxpayers also appeal the Weiner court's decision that, because the 1984 partnership returns were invalid, the statute of limitations did not begin to run. We need not reach this argument.

FN2. Although a partner's settlement agreement with the IRS converts partnership items to nonpartnership items and thereby lifts § 7422(h)'s jurisdictional bar, the conversion did not occur in this case. The Code provides that only those partnership items encompassed by the settlement agreement are converted to nonpartnership items. See 26 U.S.C. § 6231(b)(1)(C) (partnership items of a partner shall convert to nonpartnership items when "the Secretary or the Attorney General (or his delegate) enters into a settlement agreement with the partner with respect to such items ") (emphasis added). Section 6229(a) was not mentioned in the taxpayers' settlement agreements and thus may not be considered a converted item.

The holding in Alexander is not to the contrary. In that case, the taxpayer filed a refund action based on the IRS's admission, in a separate Tax Court proceeding, that the FPAA statute of limitations had run. 44 F.3d at 330. Because it was unnecessary for the court to determine the merits of the statute of limitations question when examining its jurisdiction to hear the refund suit, the court did not examine, as we must in this case, whether the FPAA statute of limitations was a partnership item that deprived the court of jurisdiction. Instead, the court examined the basis for its general grant of jurisdiction over the refund suit. In this regard, the court asked whether "the adjustments called for in the FPAA" were partnership items and determined that the settlement agreement, which settled those items specifically, converted them to nonpartnership items. Alexander, 44 F.3d at 331. Thus, the court found that it had jurisdiction to decide the partner-specific question of whether the taxpayer's settlement agreement contractually barred the refund (an issue not present in this case).

FN3. That the FPAA statute of limitations does not appear in subtitle A does not alone defeat this conclusion. The treasury regulations specifically provide that the term "partnership item" includes the legal and factual determinations underlying the amount, timing, and characterization of certain partnership items found in subtitle A. Therefore, this definition is broad enough to include in its parameters legal and factual determinations not specifically found in subtitle A.

FN4. The TMP for TFA and ODA stipulated during the Tax Court litigation that those partnerships' limitations arguments would be governed by the decision in what became known as Agri-Cal Venture Associates, 80 T.C.M. (CCH) 295 (2000). TFA and ODA thus became bound by the Tax Court's adverse statute of limitations decision.

FN5. As discussed supra in note 1, conversion does not provide a basis for jurisdiction in this case.

Exhibit B, P. 4

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

FN6. The Kraemers suffered an adverse judgment on this point, while Weiner prevailed on the court's finding that he had a profit motive relevant to the assessment of § 6221(c) interest. We do not reach the issue the district court found dispositive. Defending against the Government's appeal, however, Weiner makes, inter alia, the same argument as the Kraemers.

FN7. This section was repealed in 1989, but it applies to the tax years in question in this appeal (1984 to 1986).

FN8. The formula for determining the amount of underpayment attributable to a valuation overstatement is as follows:
(1) "actual tax liability" (*i.e.*, the tax liability that results from applying all of the IRS's proper adjustments) with
(2) the "actual tax liability" reduced by the valuation overstatement adjustment. The difference between (1) and (2) is the amount of the underpayment attributable to the valuation overstatement. *See* Todd, 862 F.2d at 542-43.
Similarly, the amount of *tax motivated underpayment* for § 6621(c) is determined in the following manner:
(1) Calculate the amount of the tax liability for the taxable year as if all items of income, gain, loss, deduction, or credit, had been reported properly on the income tax return of the taxpayer ("total tax liability"); and
(2) Without taking into account any adjustments to items of income, gain, loss, deduction, or credit that are attributable to tax motivated transactions calculate the amount of the tax liability for the taxable year as if all other items of income, gain, loss, deduction, or credit had been reported properly on the income tax return of the taxpayer ("tax liability without regard to tax motivated transactions").
The difference between (1) and (2) is the amount of the tax motivated underpayment. *See* 26 C.F.R. § 301.6221-2T, A-5.

FN9. This is because the formula requires the court to determine the portion of underpayment attributable to a valuation overstatement "after taking into account any other *proper* adjustments to tax liability." Todd, 862 F.2d at 542 (emphasis added). Therefore, because the Tax Court determined that not placing the assets in service was a "proper adjustment," the two sides of the formula were equal.

FN10. The Second Circuit rejected this approach and instead adopted the "capable of being attributed" definition in the § 6621(c) context. *See* Irom v. Comm'r, 866 F.2d 545, 547 (2d Cir.1989). In distinguishing *Todd*, the Second Circuit announced a "separability" test: if two grounds for deficiency exist, one of which qualifies as a tax motivated transaction and the other of which does not, and the two grounds are "inseparable," then the formula relied upon in *Todd* does not apply. *Id.* at 547-48. This court in *Heasley*, again relying on *Todd* and the formula, noted *Irom* as contrary authority only. 902 F.2d at 383 n. 5. This represents this circuit's only acknowledgment of the *Irom* rule.
However, even if the *Irom* rule were to apply, the reasons listed by the IRS in the FPAA are "separable." For example, in addition to sham transaction, the FPAA listed as reasons for disallowing the deductions the following, inter alia: (1) the partnership did not actively engage in the trade or business of farming, and (2) the partnership expenses paid or incurred were not ordinary and necessary trade or business expenses deductible under § 162. The Tax Court has found that both of these reasons are "separable" from a finding of sham or fraudulent transaction. Harris v. Comm'r, 58 T.C.M. (CCH) 1441 (1990).

2004 WL 2378424 (5th Cir.(Tex.)), 94 A.F.T.R.2d 2004-6518

Briefs and Other Related Documents (Back to top)

• 03-20174 (Docket) (Feb. 12, 2003)

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



• 03-20174 (Docket) (Feb. 12, 2003)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Exhibit B, P. 5

EVENT SUMMARY REPORT
Taxpayer name...: Crouse only w/o 6621c
Taxpayer ID#....:

TaxInterest Version 2005.3
11-01-05
Page 1

| Events | Date | Amount | Event Date Balance (1) |
|---|---|---|---|
| Tax | 04-15-87 | 6,747.00 | 6,747.00 |
| Payment | 11-27-02 | <6,747.00> | 19,959.90 |
| Payment | 03-26-03 | <21,666.90> | <1,360.08> |
| 02 ref | 04-15-03 | <1,220.00> | <2,583.81> |
| Payment | 11-10-03 | <14,902.07> | <17,557.94> |
| Interest Computation Date | 11-10-03 | | <17,557.94> |

(1) Balance includes any interest and penalties accrued as of the Event Date

Summary as of 11-10-03

| | Amount | Payments | Deposits | Balance |
|---|---|---|---|---|
| Tax | 6,747.00 | <24,229.15> | 0.00 | <17,482.15> |
| Interest | 20,306.82 | <20,306.82> | 0.00 | 0.00 |
| Refund interest | <75.79> | 0.00 | 0.00 | <75.79> |
| Totals | 26,978.03 | <44,535.97> | 0.00 | <17,557.94> |

Prepared using: FEDERAL IRS interest rates
Table end date: 09-30-05 TVS Table

Interest charged by IRS 37,788.97

Computed only for reversal of §6621(c) 20,306.82

Overcharged Interest $17,482.15

Exhibit C

EVENT SUMMARY REPORT  TaxInterest Version 2005.3
Taxpayer name...: Crouse only w/o 6621c + 6404e  11-01-05
Taxpayer ID#....:  Page 1

| Events | Date | Amount | Event Date Balance (1) |
|---|---|---|---|
| Tax | 04-15-87 | 6,747.00 | 6,747.00 |
| 6404e | 12-31-89 | | 8,986.26 |
| 6404e | 04-01-93 | | 8,986.26 |
| 6404e | 12-03-01 | | 18,454.35 |
| 6404e | 09-23-02 | | 18,454.35 |
| Payment | 11-27-02 | <6,747.00> | 11,707.35 |
| Payment | 03-26-03 | <21,666.90> | <9,959.55> |
| 02 ref | 04-15-03 | <1,220.00> | <11,179.55> |
| Payment | 11-10-03 | <14,902.07> | <26,081.62> |
| Interest Computation Date | 11-10-03 | | <26,081.62> |

(1) Balance includes any interest and penalties accrued as of the Event Date

Summary as of 11-10-03

| | Amount | Payments | Deposits | Balance |
|---|---|---|---|---|
| Tax | 6,747.00 | <32,828.62> | 0.00 | <26,081.62> |
| Interest | 11,707.35 | <11,707.35> | 0.00 | 0.00 |
| Totals | 18,454.35 | <44,535.97> | 0.00 | <26,081.62> |

Prepared using: FEDERAL  IRS interest rates
Table end date: 09-30-05  TVS Table

**Interest charged by IRS** 37,788.97

**Corrected only for reversal of §6621(c) & §6404(e) relief** 11,707.35

**Overcharged Interest** $26,081.62

Exhibit D

Form **843** (Rev. November 2002) Department of the Treasury Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

*Use Form 843 only if your claim involves **(a)** one of the taxes shown on line 3a or **(b)** a refund or abatement of interest, penalties, or additions to tax on line 4a.*

***Do not** use Form 843 if your claim is for —*
- *An overpayment of income taxes;*
- *A refund for nontaxable use (or sales) of fuel; or*
- *An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.*

Type or print

Name of claimant: Betty J Crouse

Your SSN or ITIN: [redacted]1880

Address (number, street, and room or suite no.): c/o Thomas E. Redding; 2914 West T. C. Jester **(POA ATTACHED, FORM 2848)**

Spouse's SSN or ITIN

City or town, state, and ZIP code: Houston, Texas 77018-7010 ***ADDRESS FOR THIS MATTER ONLY***

Employer identification number (EIN)

Name and address shown on return if different from above: 7 Fife Drum Road; Acton, MA 01720

Daytime telephone number: 713-965-9244

1 Period. Prepare a separate Form 843 for each tax period
From January 1, 1984 to December 31, 1984

2 Amount to be refunded or abated: $ 37,856.44**

3a Type of tax, penalty, or addition to tax:
☐ Employment ☐ Estate ☐ Gift ☐ Excise (see instructions)
☒ Penalty — IRC section ▶ §6621(c) and late payment penalty

b Type of return filed (see instructions):
☐ 706 ☐ 709 ☐ 940 ☐ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☒ Other (specify) 1040

4a Request for abatement or refund of:
☒ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

b Dates of payment ▶ 3/26/03 and 11/10/03

5 **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

***** *Please See Explanation Attached* *****

** *or such greater amount as is legally refundable, plus interest.*

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

Betty Jane Crouse (signature) — Date: 11/3/05

Signature (Title, if applicable. Claims by corporations must be signed by an officer.) Date

Signature Date

**For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.**

ISA
STF FED1524F

Form **2848** (Rev. January 2002) Department of the Treasury Internal Revenue Service

# Power of Attorney and Declaration of Representative

▶ See the separate instructions.

OMB No. 1545-0150
For IRS Use Only
Received by:
Name
Telephone
Function
Date / /

**Part I** Power of Attorney (Type or print.)

**1 Taxpayer information.** Taxpayer(s) must sign and date this form on page 2, line 9.

Taxpayer name(s) and address: Betty Jane Crouse [redacted]

Social security number(s): [redacted]-1880

Employer identification number:

Daytime telephone number:

Plan number (if applicable):

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2 Representative(s)** must sign and date this form on page 2, Part II.

Name and address
Thomas E. Redding
2914 West T.C. Jester
Houston, Texas 77018

CAF No. 7800-63703R
Telephone No. (713) 965-9244
Fax No. (713) 621-5227
Check if new: Address ☐ Telephone No. ☐

Name and address
Sallie W. Gladney
2914 West T.C. Jester
Houston, Texas 77018

CAF No. 7805-78887R
Telephone No. (713) 965-9244
Fax No. (713) 621-5227
Check if new: Address ☐ Telephone No. ☐

Name and address
Teresa J. Womack
2914 West T.C. Jester
Houston, Texas 77018

CAF No. 7805-87212R
Telephone No. (713) 965-9244
Fax No. (713) 621-5227
Check if new: Address ☐ Telephone No. ☐

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3 Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) or Civil Penalty (See the instructions for line 3.) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) |
|---|---|---|
| Income | 1040 | ending: December 31, 1980, 1981, 1982, 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, 1991, 1992, 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002 and 2003. |
| | for CAF purposes enter 1040 information only. | |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for **Line 4. Specific uses not recorded on CAF.** ▶ ☐

**5 Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative, the authority to execute a request for a tax return, or a consent to disclose tax information unless specifically added below, or the power to sign certain returns. See the instructions for **Line 5. Acts authorized.**

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: This power includes, but is not limited to, authorization to exercise the taxpayer's rights regarding partnership items and affected items and under I.R.C. section 6103(e)(1)(C) relative to Forms 1065 for partnerships in which the taxpayer(s) was a partner.

**Note:** *In general, an unenrolled preparer of tax returns cannot sign any document for a taxpayer. See Revenue Procedure 81-38, printed as Pub. 470, for more information.*

**Note:** *The tax matters partner of a partnership is not permitted to authorize representatives to perform certain acts. See the separate instructions for more information.*

**6 Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH,** refund checks, initial here bjc and list the name of that representative below.

Name of representative to receive refund check(s) ▶ Thomas E. Redding

**For Paperwork Reduction and Privacy Act Notice, see the separate instructions.**

ISA
STF FED4878F.1

7 **Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2 unless you check one or more of the boxes below.

a If you want the first representative listed on line 2 to receive the original, and yourself a copy, of such notices or communications, check this box . . . . . . . . ▶

b If you also want the second representative listed to receive a copy of such notices and communications, check this box. . . ▶

c If you do not want any notices or communications sent to your representative(s), check this box . . . . . . . . ▶

8 **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you **do not** want to revoke a prior power of attorney, check here . . . . . . . . ▶

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

9 **Signature of taxpayer(s).** If a tax matter concerns a joint return, **both** husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

Betty-Jane Crouse (signature) — Signature — Date: 8/12/05 — Title (if applicable)

Betty-Jane Crouse — Print Name

Signature — Date — Title (if applicable)

Print Name

**Part II** **Declaration of Representative**

**Caution:** *Students with a special order to represent taxpayers in Qualified Low Income Taxpayer Clinics or the Student Tax Clinic Program, see the separate instructions for Part II.*

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:

a Attorney — a member in good standing of the bar of the highest court of the jurisdiction shown below.
b Certified Public Accountant — duly qualified to practice as a certified public accountant in the jurisdiction shown below.
c Enrolled Agent — enrolled as an agent under the requirements of Treasury Department Circular No. 230.
d Officer — a bona fide officer of the taxpayer's organization.
e Full-Time Employee — a full-time employee of the taxpayer.
f Family Member — a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
g Enrolled Actuary — enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d)(1) of Treasury Department Circular No. 230).
h Unenrolled Return Preparer — an unenrolled return preparer under section 10.7(c)(1)(viii) of Treasury Department Circular No. 230.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.**

| Designation — Insert above letter (a-h) | Jurisdiction (state) or Enrollment Card No. | Signature | Date |
|---|---|---|---|
| A | Texas | (signature) Thomas E. Redding | 10/17/05 |
| A | Texas | (signature) Sallie W. Gladney | 10-17-05 |
| A | Texas | (signature) Teresa J. Womack | |

STF FED4676F.2